COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-191-CV
 
 
IN 
THE MATTER OF L.A.S.
 
 
------------
 
FROM 
THE 323RD DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
 
I. 
Introduction
 
        This 
is a juvenile appeal from an adjudication of delinquent conduct.  The 
juvenile court found that L.A.S. engaged in delinquent conduct by coercing, 
soliciting, or inducing gang membership and by engaging in organized criminal 
activity and placed him one years’ probation.  In four points, L.A.S. 
challenges the legal and factual sufficiency of the evidence to support the 
juvenile court's judgment of delinquency.  We will reverse and remand.
II. 
Background Facts
        On 
March 13, 2003, while J.A. walked home from school, a group of approximately 
seven young men approached him near the 300 block of West Randol Mill in 
Arlington, Texas.  One of the young men asked if J.A. wanted to become a 
member of the Mexican Klan Locos (“M.K.L.”), a criminal street gang. In 
response, J.A. declined the invitation and told the young man that he believed 
becoming a member of the M.K.L. gang was “gay.”[1]  
The young man immediately relayed J.A.’s answer to the other young men, and 
the group encircled J.A. to prevent him from walking away.  J.L.M., 
L.A.S.’s cousin, hit J.A. with a belt, and some of the boys in the circle hit 
him with closed fists.  J.A. eventually escaped the circle, outran his 
attackers, and entered a nearby vehicle inspection station, where Samir Benedir, 
a station employee, telephoned the police to report the incident.[2]
        Officer 
Chris Holder, a police officer for the City of Arlington, received a dispatch 
call to proceed to the scene of J.A.’s assault.  As Officer Holder 
traveled towards the scene, he learned that J.A.’s assailants were heading 
southbound on Oak Street from Randol Mill and were dressed in white T-shirts and 
blue jeans.  While traveling northbound on Oak Street, Officer Holder 
spotted four individuals—L.A.S., J.L.M., an unidentified male, and an 
unidentified female walking at or around the 800 block of Oak Street.  
According to Officer Holder, as he approached the four individuals, he observed 
that the three males in the group matched the description of J.A.’s assailants 
because they were all wearing white T-shirts and jeans.  As the four 
individuals noticed the approaching police vehicle, they turned around and 
walked in the opposite direction.  Officer Holder immediately exited his 
vehicle, asked the four individuals to stop, and told them that they were not 
free to leave.
        While 
detaining the individuals, Officer Holder asked L.A.S. for his name and his 
birthdate.  According to Officer Holder, L.A.S. turned and spoke Spanish to 
J.L.M. L.A.S. then gave Officer Holder a false name and birthdate.  Because 
Officer Holder suspected that L.A.S. was being untruthful concerning his 
identity, he asked L.A.S. to provide some type of identification with his name 
on it. In response, L.A.S. handed Officer Holder a T-shirt with a name written 
on it, but the name was not the name he provided to Officer Holder.  When 
Officer Holder asked him if the name on the T-shirt was his actual name, L.A.S. 
refused to answer and called Officer Holder profane names.  Shortly 
thereafter, Officer Brian Gillis, a School Resource Officer for the City of 
Arlington, identified L.A.S.,[3] giving his proper 
name to police, although L.A.S. attempted to prevent him from doing so by 
covering his face.  Officer Holder determined that probable cause existed 
to believe that L.A.S. participated in J.A.’s assault and that the assault was 
gang-related, so he arrested L.A.S.
III. 
Standard of Review
        Fundamental 
due process requires that criminal responsibility for an offense be proved 
beyond a reasonable doubt.  U.S. Const. Amend. XIV; Alvarado v. State, 
912 S.W.2d 199, 206-07 (Tex. Crim. App. 1995) (citing In re Winship, 397 
U.S. 358, 364, 90 S. Ct. 1068, 1072-73 (1970)).  When juvenile appellants 
complain that the evidence is legally insufficient to support an adjudication of 
delinquency, we apply the criminal standard of review, which is more stringent 
than the “no evidence” standard applicable in civil cases.  In re 
J.D.P., 85 S.W.3d 420, 422 (Tex. App.—Fort Worth 2002, no pet.).  The 
relevant question is not whether there was any evidence to support a state-court 
conviction, but whether there was sufficient evidence to justify a rational 
trier of fact to find guilt beyond a reasonable doubt.  Jackson v. 
Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89 (1979).  In 
reviewing the legal sufficiency of the evidence under the criminal standard, we 
view all the evidence in the light most favorable to the judgment in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt.  Jackson, 443 U.S. 
at 319, 99 S. Ct. at 2789; Burden v. State, 55 S.W.3d 608, 612 (Tex. 
Crim. App. 2001).  This standard gives full play to the responsibility of 
the trier of fact to resolve conflicts in the testimony, to weigh the evidence, 
and to draw reasonable inferences from basic facts to ultimate facts.  Jackson, 
443 U.S. at 319, 99 S. Ct. at 2789. Our duty is not to reweigh the evidence from 
reading a cold record but to act as a due process safeguard ensuring only the 
rationality of the fact finder.  Williams v. State, 937 S.W.2d 479, 
483 (Tex. Crim. App. 1996).  Consequently, we will not disturb the fact 
finder’s decision unless it is irrational or unsupported by a “mere 
modicum” of the evidence.  See Moreno v. State, 755 S.W.2d 866, 
867 (Tex. Crim. App. 1988).
        In 
determining the legal sufficiency of the evidence and faced with a record that 
supports conflicting inferences, we “must presume—even if it does not 
affirmatively appear in the record—that the trier of fact resolved any such 
conflict in favor of the prosecution, and must defer to that resolution.” Matson 
v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  The standard of 
review is the same for direct and circumstantial evidence cases. Burden, 
55 S.W.3d at 613; Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 
1999).
        We 
also apply the criminal factual sufficiency standard of review to appeals from 
juvenile adjudications. In re B.P.H., 83 S.W.3d 400, 407 (Tex. 
App.—Fort Worth 2002, no pet.).  Therefore, in reviewing the factual 
sufficiency of the evidence to support a conviction, we are to view all the 
evidence in a neutral light, favoring neither party.  Johnson v. State, 
23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. State, 922 S.W.2d 126, 
129, 134 (Tex. Crim. App. 1996).  Evidence is factually insufficient if it 
is so weak as to be clearly wrong and manifestly unjust or the adverse finding 
is against the great weight and preponderance of the available evidence.  Johnson, 
23 S.W.3d at 11.  Therefore, we must determine whether a neutral review of 
all the evidence, both for and against the finding, demonstrates that the proof 
of guilt is so obviously weak as to undermine confidence in the judgment, or the 
proof of guilt, although adequate if taken alone, is greatly outweighed by 
contrary proof.  Id.  In performing this review, we are to give 
due deference to the fact finder’s determinations.  Id. at 8-9; Clewis, 
922 S.W.2d at 136. We may not substitute our judgment for that of the fact 
finder’s.  Johnson, 23 S.W.3d at 12.  Consequently, we may 
find the evidence factually insufficient only where necessary to prevent 
manifest injustice.  Johnson, 23 S.W.3d at 9, 12; Cain v. State, 
958 S.W.2d 404, 407 (Tex. Crim. App. 1997).
        To 
make a determination of factual insufficiency, a complete and detailed 
examination of all the relevant evidence is required.  Johnson, 23 
S.W.3d at 12.  A proper factual sufficiency review must include a 
discussion of the most important and relevant evidence that supports the 
appellant’s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 
603 (Tex. Crim. App. 2003).
IV. 
Sufficiency of the Evidence Under Section 22.015
        In 
his first two points, L.A.S. contends that the evidence is legally and factually 
insufficient to support his adjudication under section 22.015 of the Texas Penal 
Code because the State failed to connect him, either as a primary actor or under 
the law of parties, to the offense of coercing, soliciting, or inducing gang 
membership.  The State maintains that the evidence is sufficient to support 
the juvenile court’s adjudication findings because the combined and cumulative 
force of all the incriminating circumstances clearly link L.A.S. as a party to 
the offense of coercing, soliciting, or inducing gang membership.
        A. The Law
        Pursuant 
to section 22.015 of the Texas Penal Code, a person commits an offense if, with 
intent to coerce, induce, or solicit a child younger than seventeen years of age 
to actively participate in the activities of a criminal street gang,[4] the person threatens the child with imminent bodily injury 
or causes bodily injury to the child.  Tex. Penal Code Ann. § 22.015. 
In Texas, “[a] person is criminally responsible as a party to an offense if 
the offense is committed by his own conduct, by the conduct of another for which 
he is criminally responsible, or by both.”  Id. § 7.01(a).  
Under the law of parties, the State may enlarge a person’s criminal 
responsibility to acts in which he may not be the primary actor if such person, 
acting with intent to promote or assist the commission of the offense, solicits, 
encourages, directs, aids, or attempts to aid the other person to commit the 
offense.  Id. § 7.02(a)(1)-(2).
        As 
in criminal cases, the juvenile court may utilize the law of parties in 
proceedings if the evidence presented supports the theory despite the absence of 
such allegation in the State’s petition.  In re O.C., 945 S.W.2d 
241, 244-45 (Tex. App.—San Antonio 1997, no writ); see also In re S.D.W., 
811 S.W.2d 739, 748-49 (Tex. App.—Houston [1st Dist.] 1991, no 
writ) (recognizing that State need not plead law of parties because it is an 
evidentiary matter).  The evidence is sufficient to support a conviction 
under the law of parties where the accused is physically present at the 
commission of the offense and encourages its commission by words or other 
agreement.  Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App.) 
(op. on reh’g), cert. denied, 519 U.S. 1030 (1996).  An agreement 
of parties to act together in a common design can seldom be proved by words, but 
reliance can often be had on the actions of parties showing an understanding and 
a common design to do a certain act.  Wygal v. State, 555 S.W.2d 
465, 469 (Tex. Crim. App. 1977).
        Circumstantial 
evidence alone may be used to prove that one is a party to an offense.  Id.  
In determining whether the accused was a party, it is proper to look to events 
occurring before, during and after the commission of the offense.  Cordova 
v. State, 698 S.W.2d. 107, 111 (Tex. Crim. App. 1985), cert. denied, 
476 U.S. 1101 (1986).  While mere presence at or near the scene of a crime 
is not alone sufficient to prove that a person was a party to the offense, it is 
a circumstance tending to prove guilt, which combined with other facts, may 
suffice to show that the accused was a participant.  Beardsley v. State, 
738 S.W.2d 681, 685 (Tex. Crim. App. 1987).  Similarly, while flight alone 
is not dispositive of guilt, evidence of flight is a circumstance from which an 
inference of guilt may be drawn.  Valdez v. State, 623 S.W.2d 317, 
321 (Tex. Crim. App. 1981) (op. on reh’g).  Likewise, the use of a false 
name to avoid identification by an accused may indicate a consciousness of guilt 
with regard to the offense in question.  Felder v. State, 848 S.W.2d 
85, 98 (Tex. Crim. App. 1992), cert. denied, 510 U.S. 829 (1993).  
In a circumstantial evidence case, it is not necessary that every fact point 
directly and independently to the guilt of the accused; rather, it is enough if 
the conclusion is warranted by the combined and cumulative force of all the 
incriminating circumstances.  See Johnson v. State, 871 S.W.2d 183, 
186 (Tex. Crim. App. 1993), cert. denied, 511 U.S. 1046 (1994).
        B. The Evidence
        Paragraph 
one of the State’s petition alleged that L.A.S. violated section 22.015, when 
“he did then and there with the intent to coerce or induce or solicit [J.A.], 
a child younger than 17 years of age, to actively participate in the activities 
of a criminal street gang, and the defendant did cause bodily injury to [J.A.], 
by hitting him with his hand.”  Thus, in the instant case, the juvenile 
court’s determination that L.A.S. engaged in delinquent conduct is proper if 
the evidence sufficiently demonstrates that he committed the offense of 
coercing, inducing, or soliciting gang membership by his own conduct or if he, 
acting with intent to promote or assist the commission of the offense, 
solicited, encouraged, directed, aided, or attempted to aid another person in 
the commission of coercing, inducing, or soliciting gang membership.  See 
Tex. Penal Code Ann. §§ 
7.01(a), 7.02(a)(2), 22.015(b).
        At 
the adjudication hearing, J.A. positively identified J.L.M. as the assailant who 
struck him with the belt, but said he did not recognize L.A.S. as one of the 
boys who encircled him.  J.A. said that not all of the approximately seven 
boys who encircled him during the assault hit him.  According to J.A., his 
assailants were mostly Hispanic[5] males, “a little 
younger” than himself, dressed in “white shirts and Dickie pants.”
        During 
the adjudication hearing, the State did not present the testimony of any 
eyewitnesses who observed L.A.S. at the scene or who saw members of the group of 
young men actually hitting J.A. Benedir testified that, on the day of the 
assault, he looked out the inspection station’s office window and saw a group 
of approximately three or four young men, dressed in white T-shirts, chasing 
J.A.  Although Benedir could not identify the young men chasing J.A., he 
testified that the young man at the front of the group was bleeding from his 
head and had a leather belt rolled over his hand.
        Officer 
Holder testified that he saw L.A.S., J.L.M., the unidentified male, and the 
unidentified female walking approximately two blocks from the scene of J.A.’s 
assault.  According to Officer Holder, when he initially spotted the four 
individuals, it did not appear as though they were trying to get away, but as 
soon as he approached the individuals in his police vehicle, they changed 
directions, “looking as to almost go in between some houses right there around 
the 800 block of Oak Street.”  Nonetheless, he indicated that the four 
individuals immediately stopped walking after he exited his vehicle and told 
them to stop.  Officer Holder testified that upon detaining L.A.S. he 
noticed that “his shirt appeared to messed up” and “semi-untucked.”
        Officer 
Humberto Gomez, an Arlington police officer who arrived shortly after Officer 
Holder detained L.A.S. and J.L.M., testified that on the afternoon in question, 
L.A.S. was wearing a white T-shirt and blue jeans, and J.L.M. was wearing a 
white muscle shirt and gray pants.  Officer Gomez further testified that at 
that time, he noticed that J.L.M. was bleeding from “the back of his head, 
around his ear area.”  According to Officer Gomez, when he questioned 
J.L.M. about his involvement with the assault and the blood on his head at the 
scene of detainment, J.L.M. denied that he had gotten in a fight with J.A. and 
maintained that the injury to his head was the result of running into a pole.  
After J.L.M. was arrested and taken to the juvenile detention center, he asked 
to speak with Officer Gomez and he admitted to Officer Gomez that he had fought 
with J.A., striking him with a belt.  J.L.M. maintained that he had acted 
alone and denied any involvement by L.A.S.
        Officer 
Gomez spoke with L.A.S. at the juvenile detention center.  L.A.S. did not 
offer any information about the assault, but he asked Officer Gomez what would 
happen if he were to strike Officer Gomez’s partner.  In addition, 
Officer Gomez testified that, while at the juvenile detention center, he 
observed L.A.S. and J.L.M. making hand signals to one another.  According 
to Officer Gomez, the signals L.A.S. and J.L.M. exhibited were not “regular, 
ordinary everyday gestures,” rather they appeared “very stylistic” in 
nature.
        During 
the adjudication hearing, the State called Officer Gillis to testify regarding 
his knowledge about the M.K.L. gang and his prior interactions with both L.A.S. 
and J.L.M. Officer Gillis testified that North Arlington had a history of gang 
activity, that M.K.L. was a criminal street gang in the area, and that March 
2003 was a heavy recruiting period for M.K.L.  Officer Gillis further 
testified that the dress associated with M.K.L. included “blue khaki pants, 
black khaki pants, [and] white shirts” and he indicated that “Dickie pants 
[were] extremely popular” among M.K.L. members.
        In 
addition, Officer Gillis testified that he had known both L.A.S. and J.L.M. for 
approximately two years and had interviewed both of the young men on several 
occasions concerning incidents linked with gang involvement.  According to 
Officer Gillis, during an interview prior to the assault, J.L.M. had admitted 
that he was a member of M.K.L.  With regard to L.A.S., Officer Holder 
opined that he was a member of M.K.L due to his constant association with J.L.M. 
and other known members of M.K.L.  During his testimony, Officer Holder 
also stated that L.A.S. dressed in the manner of M.K.L. members at school and 
had previously exhibited gang activity by participating in an offense with an 
affiliated member of M.K.L.  Moreover, while Officer Holder acknowledged 
that he was not aware that L.A.S. and J.L.M. were cousins, he indicated that he 
did not base his opinion regarding L.A.S.’s membership in M.K.L. solely upon 
his associations with J.L.M.
        The 
State also called Officer Carlos Alaniz, a detective in the Gang Unit of the 
Arlington Police Department, to testify as an expert on gangs.  Officer 
Alaniz testified that M.K.L. was a criminal street gang in Arlington with 
approximately 25 members and that the 300 block of Randol Mill was located 
within the geographic territory associated with M.K.L. activity.  With 
respect to M.K.L., Officer Alaniz also testified that, in order to recruit new 
members, a member of the gang would typically go up to an individual and ask him 
to join the gang, and if the individual refused, he might be assaulted for 
disrespecting the gang.
        3. Discussion
        Circumstantial 
evidence exists connecting L.A.S. as a party to the offense of coercing, 
soliciting, or inducing gang membership.  Our review of the record reveals 
that this circumstantial evidence constitutes barely more than a “mere 
modicum.”  J.A.’s testimony that before the assault the group asked him 
to join M.K.L. and testimony from Arlington police officers characterizing 
M.K.L. as a criminal street gang involved in heavy recruiting at the time of the 
offense, support the juvenile court’s determination that J.A.’s assault was 
gang-related.  Although there is no evidence that L.A.S. struck J.A. 
himself, the record reflects that J.A.’s assailants at least encouraged and 
aided in the commission of the assault by encircling him after he rebuffed the 
invitation to join M.K.L.  Shortly after the assault, police apprehended 
L.A.S. walking on a street approximately two blocks from the scene with his 
cousin, J.L.M. J.A. identified J.L.M. as one of the people who assaulted him.  
Additionally, an inference of guilt may be drawn from testimony that L.A.S., 
J.L.M., and the two unidentified individuals immediately changed directions when 
they noticed Officer Holder approaching them.  See, e.g., Mayhue v. 
State, 969 S.W.2d 503, 508 (Tex. App.—Austin 1998, no pet.) (holding 
evidence of flight supports inference of guilt).
        The 
record also reflects that the group of young men that assaulted J.A. were all 
dressed in white T-shirts and jeans or “Dickie pants.”  On the 
afternoon in question, L.A.S. was dressed in a white T-shirt and jeans. 
Furthermore, after he was detained by Officer Holder, L.A.S. provided a false 
name and birthdate to Officer Holder, and he attempted to prevent Officer Gillis 
from identifying him.  These facts likewise raise an inference of guilt.  
See Felder, 848 S.W.2d at 98.  Viewing all the evidence in the light 
most favorable to the juvenile court’s findings, and considering the combined 
and cumulative force of all the incriminating circumstances, we hold that a 
rational trier of fact could have found beyond a reasonable doubt that L.A.S. 
engaged in delinquent conduct as a party to the offense of coercing, soliciting, 
or inducing gang membership.  We hold that the evidence is legally 
sufficient to support L.A.S.’s adjudication, and we overrule L.A.S.’s first 
point.
        Turning 
to our factual sufficiency review, viewing all the evidence in a neutral light, 
favoring neither party, the evidence presented connecting L.A.S. as a party to 
the offense of coercing, soliciting, or inducing gang membership is so weak as 
to undermine confidence in the juvenile court’s judgment.  No direct 
evidence exists in the record placing L.A.S. at J.A.’s assault.[6]  Neither J.A. nor Benedir could identify L.A.S. as 
one of the assailants. In fact, J.A. specifically said that he did not recognize 
L.A.S. from anywhere.  The record also reflects that J.L.M. denied that 
L.A.S. was a party to J.A.’s assault.
        Although 
police apprehended L.A.S. near the scene, the evidence established that school 
had dismissed only a little earlier, and that even J.A. was walking home from 
school.  Thus, the record supports a noncriminal reason for L.A.S.’s 
presence near the scene of the assault.  Although police apprehended L.A.S. 
with J.L.M., a person who participated in the assault, J.L.M. is L.A.S.’s 
cousin.  Thus, the record supports a nonoffense-related reason for 
L.A.S.’s association with J.L.M.  This reason for L.A.S.’s presence 
with J.L.M. on the day of the assault is also supported by the presence of two 
other people, one male and one female, walking with the cousins.  These two 
people were not involved in the assault,[7] and no 
evidence exists that L.A.S. was with J.L.M. during the assault, not with these 
two other people.  After reviewing all of the evidence in the instant case, 
we conclude that the evidence is factually insufficient to support the juvenile 
court’s judgment of delinquency based on section 22.015 of the Texas Penal 
Code.  See Nguyen v. State, 54 S.W.3d 49, 54-55 (Tex. 
App.—Texarkana 2001, pet. ref’d); Ward v. State, 48 S.W.3d 383, 391 
(Tex. App.—Waco 2001, pet ref’d); Reina v. State, 940 S.W.2d 770, 
774-75 (Tex. App.—Austin 1997, pet. ref’d).  Accordingly, we sustain 
L.A.S.’s second point.
V. 
Sufficiency of the Evidence Under Section 71.02
        In 
his third and fourth points, L.A.S. contends that the evidence is legally and 
factually insufficient to support his adjudication under section 71.02 of the 
Texas Penal Code because the State failed to connect him, either as a primary 
actor or under the law of parties to the offense of engaging in organized 
criminal activity.  The State, however, maintains that the evidence is 
sufficient to support the juvenile court’s adjudication findings because the 
evidence demonstrates that L.A.S. was a member of M.K.L. and that he 
participated in J.A.’s assault.
        Pursuant 
to section 71.02 of the Texas Penal Code, a person commits the offense of 
engaging in organized activity if,
 
with 
the intent to establish, maintain, or participate in a combination or in the 
profits of a combination or as a member of a criminal street gang, he commits or 
conspires to commit . . . murder, capital murder, arson, aggravated robbery, 
robbery, burglary, theft, aggravated kidnapping, kidnapping, aggravated assault, 
aggravated sexual assault, sexual assault, forgery, deadly conduct, assault 
punishable as a Class A misdemeanor, burglary of a motor vehicle, or 
unauthorized use of a motor vehicle.
 
 
Tex. Penal Code Ann. § 
71.02(a)(1).  A determination of guilt in regard to organized criminal 
activity requires two ingredients: (1) an intent to participate in a criminal 
combination and (2) the performance of some overt act in furtherance of the 
agreement.  See Barber v. State, 764 S.W.2d 232, 235 (Tex. Crim. 
App. 1988).  Moreover, “[b]ecause the ‘overt act’ element of 
organized criminal activity need not be criminal in itself, acts that suffice 
for party liability--those that encourage, solicit, direct, aid, or attempt to 
aid the commission of the underlying offense--would also satisfy the overt act 
element of section 71.02.”  Otto v. State, 95 S.W.3d 282, 284 
(Tex. Crim. App. 2003) (footnote omitted).
        In 
the instant case, paragraph two of the State’s petition alleged that L.A.S. 
violated section 71.02 when “he did then and there with the intent to 
establish, maintain or participate as a member of a criminal street gang . . . 
commit[] the assault of [J.A.] by hitting [J.A.] with his hand.”  
Consequently, the State was required to prove that M.K.L. was a criminal street 
gang, that L.A.S. was a member of M.K.L., and that he committed the overt act of 
assault by hitting J.A. with his hand or that he encouraged, solicited, 
directed, aided, or attempt to aid another in the commission of the assault.  
See Tex. Penal Code Ann. §§ 7.01, 
7.02(a)(2), 71.02(a)(1).
        In 
both paragraph one and paragraph two of the State’s petition, the manner and 
means by which the State alleged L.A.S. had committed the offenses in question 
were almost identical.  Specifically, under both paragraphs, the State was 
required to prove that L.A.S. caused bodily injury (paragraph one) or assaulted 
(paragraph two) J.A. by hitting him with his hand either as primary actor or as 
a party.  Thus, for the same reasons set forth and discussed above with 
respect to point one, we hold that the evidence is legally sufficient to support 
the juvenile court’s findings that L.A.S. violated section 71.02 by 
participating in J.A.’s assault.  As a result, we overrule L.A.S.’s 
third point.  However, as indicated above with respect to point two, 
because our review of the entire record demonstrates that the proof connecting 
L.A.S. as a participant in J.A.’s assault is so obviously weak as to undermine 
confidence in the juvenile court’s judgment, we must sustain L.A.S.’s fourth 
point.
VI. Conclusion
        Having 
sustained L.A.S.’s second and fourth points on appeal, we reverse the juvenile 
court’s judgment and remand this case for a new adjudication hearing.
 
 
                                                          SUE 
WALKER
                                                          JUSTICE
 
 
PANEL 
B:   HOLMAN, GARDNER, and WALKER, JJ.
 
DELIVERED: 
April 22, 2004

 
NOTES
1.  
At the hearing, J.A. indicated that he was speaking through an interpreter 
because he was more comfortable speaking Spanish.  When the interpreter 
translated the word “gay,” he recognized that “queer” was another way of 
interpreting what J.A. had said.
2.  
The vehicle inspection station is located at 302 West Randol Mill.  
According to Benedir, Oak Street runs along the side of the station and is 
located approximately 100 feet from the building.
3.  
Officer Gillis came onto the scene as Officer Holder was attempting to identify 
L.A.S.  Because Officer Gillis worked in junior high schools in the area, 
Officer Holder asked if he could identify L.A.S.
4.  
The term “criminal street gang” is defined in the penal code as “three or 
more persons having a common identifying sign or symbol or an identifiable 
leadership who continuously or regularly associate in the commission of criminal 
activities.”  Tex. Penal Code Ann. § 71.01(d) 
(Vernon 2003).
5.  
J.A. also testified that at least one African American young man participated in 
encircling him.
6.  
The record is factually sufficient to establish that L.A.S. was a member of 
M.K.L., but is factually insufficient to establish that L.A.S. threatened or 
caused bodily injury to J.A. as a primary actor or a party.
7.  
J.A. testified that all of his assailants were male.  Thus, his testimony 
establishes that the unidentified female was not a party to his assault.